UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICKY ABRAM, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-09-4091 |
| | § | |
| NABORS OFFSHORE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**<u>OPINION AND ORDER</u>**

Pending before the Court is Plaintiff Ricky Abram's ("Abram") motion to remand (Doc. 5), as well as Defendant Nabors Offshore Corp.'s ("Nabors") response (Doc. 6), Plaintiff's reply (Doc. 7), and Defendant's surreply (Doc. 10).   Upon review and consideration of this motion, the response, reply, and surreply thereto, the relevant legal authority, and for the reasons explained below, the Court reserves decision on Plaintiff's motion to remand.


I.  <u>Background and Relevant Facts</u>

Abram worked for Nabors intermittently from 1994 to 2009 as a roustabout and floor hand on drilling rigs off the shore of Texas and Louisiana.  (Doc. 6, Exh. 1 at 1.)  On August 15, 2009, Abram was injured while working on the MODS 201 drilling rig, which was mounted on the Hoover Diana production platform.  *Id.*  The Hoover Diana is a tension leg platform attached to the Outer Continental Shelf.  (Doc. 10, Exh. 1 at 1.)  On November 13, 2009, Abrams filed suit under the Jones Act, 46 U.S.C. § 30104, in the 334th Judicial District Court of Harris County, Texas.  (Doc. 1, Exh. 1 at 1.)  On December 23, 2009, Nabors removed the case to this Court under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331.  (Doc. 1.)  Abrams now moves to remand.  (Doc. 5.)

II.  Removal under the Jones Act

The Jones Act states that

[a] seaman injured in the course of employment or, if the seaman dies from the
injury, the personal representative of the seaman may elect to bring a civil action
at law, with the right of trial by jury, against the employer.  Laws of the United
States regulating recovery for personal injury to, or death of, a railway employee
apply to an action under this section.

46 U.S.C. §30104.  The Jones Act provides seamen with the same legal protections provided to

railway employees under the Federal Employee Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*

FELA cases are not removable.

A civil action in any State court against a railroad or its receivers or trustees,
arising under sections 1–4 and 5–10 of the Act of April 22, 1908 (45 U.S.C. §§
51–54, 55–60), may not be removed to any district court of the United States.

28 U.S.C. § 1445(a).  Because the Jones Act is read to incorporate 45 U.S.C. § 51 *et seq.*, cases

brought under the Jones Act are not removable.

The Court may deny remand of fraudulently pleaded Jones Act claims.  *Holmes v.

Atlantic Sounding Co.*, 437 F.3d 441 (5th Cir. 2006).  The Court uses a "summary judgment-like

procedure" to examine such claims.  *Id.* at 445 (quoting *Burchett v. Cargill, Inc.*, 48 F.3d 173,

175 (5th Cir. 1995)).   "The court should not conduct an evidentiary hearing but, based on

appropriate documentation in addition to the pleadings, should instead resolve all disputed

questions of fact in favor of the plaintiff."  *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217

(5th Cir. 1995).  Such documentation may include "affidavits and deposition transcripts."  *Id.*

The defendant seeking removal has the burden of proof by a preponderance of the evidence.

*New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008).  "The court

may deny remand where, but only where, resolving all disputed facts and ambiguities in current

substantive law in plaintiff's favor, the court determines that the plaintiff has no possibility of establishing a Jones Act claim on the merits." *Holmes*, 437 F.3d at 445 (citing *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1999)).  A "mere assertion" of a fraudulent claim is insufficient.  *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) (citing *Yawn v. Southern Ry.*, 591 F.2d 312, 316 (5th Cir. 1979)).  "[T]he defendants must go further and prove that the allegation of Jones Act status is so baseless, colorable and false so as to constitute a fraudulent attempt to evade removal to federal court."  *Lonthier v. Northwest Ins. Co.,* 599 F.Supp. 963, 965 (W.D. La. 1985).

The Jones Act does not define "seaman."  In *Chandris, Inc. v. Latsis,* the Supreme Court established a two-prong test for determining seaman status.  515 U.S. 347, 355 (1995).  "The worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, and the worker must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in terms of both its duration and its nature."  *Id.*  The Court affirmed the "rule of thumb" that a substantial duration is at least 30% of an employee's working hours.  *Id.* (citing *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1076 (5th Cir. 1986)).  A "fundamental prerequisite" for these tests is the determination of what qualifies as a "vessel." *Holmes v. Atlantic Sounding Co., Inc.*, 437 F.3d 441, 446 (5th Cir. 2006) (quoting *Bernard v. Binnings Constr. Co.*, 741 F.2d 824, 828 (5th Cir. 1984)).  A "vessel" under the Jones Act includes "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."  *Stewart v. Dutra* 543 U.S. 481, 489 (2005) (holding that 1 U.S.C. § 3, the Rules of Construction Act, provides the "controlling definition of the term 'vessel'" in the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 902(3)(G), and thereby in the Jones Act).

For a federal court to have subject matter jurisdiction, Jones Act complaints removed from state court must assert a cause of action under a federal law apart from the Jones Act, such as the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.*  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("[T]he plaintiff's well-pleaded complaint, not the removal petition, must establish that the case arises under federal law.")  The OCSLA states:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State.

43 U.S.C. § 1333(a)(1).  It is not required that the plaintiff specifically identify a federal law if the complaint is "necessarily federal in character by virtue of the clearly manifested intent of Congress." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987).


## III.  Discussion

Abram alleges he was injured while working for Nabors as a "seaman who was assigned to work on Defendant's vessel."  (Doc. 1, Exh. 1 at 2.)  Abram testified that he "spent 50% of [his] time with Nabors on vessels, specifically Nabors-owned vessels named Pool 50, Pool 53, Pool 54, Ranger 5 and Ranger 6."  (Doc. 5, Exh. 1.)  Nabors responds that Abram "was not assigned to a vessel or an identifiable fleet of vessels."  (Doc. 6, Exh. 2 at 2.)  George R. King, a human resources supervisor for Nabors, testified that "[i]n analyzing the types of rigs that Plaintiff has worked upon, it is apparent that those are rigs similar to the MODS 201 which are rigs on fixed platforms. . . . Abram has never performed work for Nabors on a vessel that was

underway or moving across the sea."  (Doc. 10, Exh. 2 at 2.)  Abram replies that his work history records and affidavit show that he had "a twelve-year history working as a floorman and roustabout working on a common fleet of vessels."  (Doc. 7 at 3.)

The affidavits contradict each other regarding whether Abram worked primarily on vessels or fixed platforms.  The Court must determine if Abram has "no possibility" of establishing that he worked primarily on vessels, given the varying definitions of the term "vessel."  *Holmes*, 437 F.3d at 445.

> Attempts to fix unvarying meanings hav[ing] a firm legal significance to such terms as 'seaman', 'vessel', 'member of a crew' must come to grief on the facts. These terms have such a wide range of meaning, under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case.  Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts.

*Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir. 1959).

The parties disagree whether the Hoover Diana is a vessel under the Jones Act.  In an unrelated case, a sister court found that the Hoover Diana is "clearly not a vessel in navigation under the Jones Act."  Court Order, Doc. 25 at 3, *Hunter v. Danos,* Civ. No. 02-0848-F (E.D. La. June 20, 2002), *aff'd,* 71 Fed. App'x. 348 (5th Cir. 2003).  That court used the "work platform test" to evaluate the Hoover Diana's status according to three factors: "(1) whether the structure was built to serve primarily as a work platform; (2) whether the structure was moored or otherwise secured; and (3) whether the structure has a transportation function 'beyond theoretical mobility and occasional incidental movement.'"  *Id.* (quoting *Fields v. Pool Offshore, Inc*, 182 F.3d 353, 358 (5th Cir. 1999)).

The Supreme Court subsequently disavowed the work platform test, holding that the first

factor, primary function, was not critical: "Section 3 requires only that a watercraft be 'used, or capable of being used, as a means of transportation on water' to qualify as a vessel.  It does not require that a watercraft be used primarily for that purpose."  *Stewart v. Dutra,* 543 U.S. 481, 495 (2005).  The second factor, whether a vessel is moored, was reduced to whether a vessel cannot be unmoored: "[A] watercraft need not be in motion to qualify as a vessel under § 3.  Looking to whether a watercraft is motionless or moving is the sort of "snapshot" test that we rejected in *Chandris*."  *Id.*  Nonetheless, the Court affirmed the distinction between "theoretical" and "practical" mobility.  "The question remains in all cases whether the watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one."  *Id.* at 496.

"*Stewart* has significantly enlarged the set of unconventional watercraft that are vessels under the Jones Act."  *Holmes v. Atlantic* 437 F.3d 441, 448 (5th Cir. 2006).  The Fifth Circuit did not enumerate such watercraft, and has yet to apply *Stewart* to offshore platforms.  One district court initially determined that a tension leg platform was a vessel under *Stewart*, based on the possibility of future movement:  "[T]here is no contention that she cannot be 'cut loose' and towed to her next location if Shell deems it necessary.  After the well . . . discontinues production, the Court assumes that [she] will be towed to a different well and be 'permanently installed' again."  *Jordan v. Shell Offshore, Inc.* (S.D. Tex. January 10, 2007), 2007 WL 128313, at *5 (quoting *Stewart,* 543 U.S. at 496).  The court then reversed itself after hearing testimony during trial:

> After its anticipated life end in 2040, or so, [she] will be disassembled and scrapped.  It is likely that portions of [her] may then be towed to other locations before they are scrapped or discarded, but these portions cannot be considered vessels upon which a seaman could work. . . . Once it was assembled, it was not—and is not—'practically capable of maritime transportation.'"

*Jordan v. Shell Oil Co.* (S.D. Tex. August 02, 2007), 2007 WL 2220986, at *2 (quoting *Stewart*, 543 U.S. at 497).

According to the undisputed affidavit of Nabors' rig superintendent George E. King (not the same individual as the aforementioned George F. King), the Hoover Diana "was constructed on shore and transported by barge to its site" and "will remain fixed to its location for its entire design service life." (Doc. 10, Exh. 1 at 2.) There are no plans to transport the platform to another site. (*Id.*) Based on King's affidavit, the possibility of such an event is, at most, "theoretical." *Stewart,* 543 U.S. at 496. The platform is therefore not a vessel under the Jones Act.

The status of the other platforms on which Abram worked is obscured by conflicting affidavits. Abram alleges, "I split my time between working on jack up rigs and platforms. . . . I estimate I spent 50% of my time with Nabors on vessels, specifically Nabors-owned vessels named Pool 50, Pool 53, Pool 54, Ranger 5 and Ranger 6." (Doc. 5, Exh. 1.) Jackup rigs have long been classified as vessels, even before *Stewart* expanded the definition. *Houston Oil & Minerals Corp. v. American Int'l Tool Co.*, 827 F.2d 1049, 1053 (5th Cir. 1987) ("We take as a given in this circuit" that vessel status of jackup rigs is "unassailably established"). None of the alleged vessels Abram identifies is listed on his work history. (Doc. 6, Exh. 1.) Rig superintendent King testified that "Abram has worked on workover rigs and drilling rigs his entire employment with Nabors. In analyzing the types of rigs that Plaintiff has worked upon, it is apparent that those are rigs similar to the MODS 201 which are rigs on fixed platforms." (Doc. 10, Exh. 2 at 2.) King does not state explicitly that Abram never worked on jackup rigs, nor does he respond to the list of named vessels on which Abram claims to have worked. The work history does not even indicate the type of platforms on which Abram worked. (Doc. 6,

Exh. 1 at 1.)

IV.  Conclusion

Accordingly, the Court reserves decision on Plaintiff's motion to remand (Doc. 5) and requests further briefing from the parties regarding Abram's work history.  Both parties are requested to address the following questions:

1.  What platforms or vessels did Abram work on during each of his assignments?

   a.  Identify the name and type of platform or vessel (e.g. jackup, semisubmersible, TLP) supporting each rig listed in the "RIG" column and "Rig/Yard" rows of Abram's work history.  (Doc. 6, Exh. 1.)  Identify the type of mooring, how the platform or vessel was transported to the field, and the possibility of transporting the platform or vessel to another field in the future.  In the case of the Hoover Diana, there is an apparent contradiction between Nabors' rig superintendent George E. King's affidavit and the findings of the court in *Hunter v. Danos*, Civ. No. 02-0848-F (E.D. La. June 20, 2002), *aff'd,* 71 Fed. App'x. 348 (5th Cir. 2003).  The King affidavit states that the Hoover Diana is a "TLP" with "legs . . . permanently imbedded in the ocean floor" (Doc. 10, Exh. 1 at 2), while the court in *Hunter v. Danos* found that it was similar to a "spar" platform, "secured to the seabed with several chains which are connected to anchor piles."  Court Order, Doc. 25 at 3, *Hunter v. Danos*, Civ. No. 02-0848-F (E.D. La. June 20, 2002)

   b.  Identify Nabors' legal relation to each platform or vessel.

   c.  Only include vessels or platforms on which Abram worked as a roustabout or floorhand on a drilling rig.  Do not include tenders or storage vessels on which

Abram may have performed "irregular" tasks, "subsidiary to the progress of the drilling operation."  *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1346 (5th Cir. 1980).  Do not include vessels or platforms which Abram simply used for transportation or living facilities.  *Chandris,* 515 U.S. at 358; *Keener v. Transworld Drilling Co.*, 468 F.2d 729, 732 (5th Cir. 1972).

2. When did Abram work on the "Pool 50, Pool 53, Pool 54, Ranger 5 [and] Ranger 6"? (Doc. 5, Exh. 1.)

    a.  Include specific dates.

    b.  Identify the type of each platform or vessel and Nabors' legal relation to it.

    c.  Provide work records, if available.

Both parties are to submit briefs within ten (10) days and any responses ten (10) days thereafter.

SIGNED at Houston, Texas, this 5th day of August, 2010.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE